James M. Piotrowski
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, Idaho 83701
Telephone: (208)331-9200
Facsimile: (208)331-9201
james@idunionlaw.com
marty@idunionlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUTH GARFIELD, as guardian of SARAH WHITTEMOORE | Case No. 1:17-cv-261 |
| Plaintiffs, | COMPLAINT |
| vs. | |
| RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare | |
| Defendant. | |

COMES NOW the Plaintiff, by and through counsel, and for her Complaint would show as follows:

**I.  Nature of the Action**

Sarah Whittemoore, ("Whittemoore") is intellectually and/or physically disabled and poor. Facing these dual disadvantages, Whittemoore relies on the State of Idaho's Medicaid program, her guardian Ruth Garfield ("Garfield"), family, friends, and service providers to remain healthy and functional while living in her community rather than being confined to an institution. In 2017, the Idaho Department of Health and Welfare ("Department") changed and

reduced Whittemoore's services without properly notifying her of the change, providing any explanation for the change, or informing her of any right to challenge the change.  All of this violates Wittemoore's right to due process pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Idaho Constitution, as well as violating the federal Medicaid Act and federal regulations. Plaintiff Garfield brings suit to prevent the State of Idaho, acting through its agents, from violating Whittemoore's rights.

## II.  Parties, Jurisdiction, Venue

1. Whittemoore is a developmentally disabled adult and a resident of the State of Idaho who meets both the disability and income eligibility requirements to participate in Idaho's Medicaid program and to receive benefits under its developmental disability home and community based services waiver.  Garfield is her legal guardian and also a resident of the State of Idaho.

2. Defendant Richard Armstrong is the Director of the Idaho Department of Health and Welfare.  In that official capacity he is responsible for implementing Idaho's Medicaid plan.

3. This Court has jurisdiction over claims arising under 42 U.S.C. §1983 as well as claims arising under the Supremacy Clause of the United States Constitution.

4. Because the events and omissions giving rise to the cause of action occurred within the State of Idaho, venue is appropriate in this Court.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, 5 U.S.C. §702, and supplemental jurisdiction over claims arising under state law, if any, pursuant to 28 U.S.C. §1367.  Venue is appropriate in this District as the Defendant resides herein, the Plaintiffs reside herein, and the facts and events giving rise to the claim occurred herein.

### III.  Facts Giving Rise to Cause of Action

6.Medicaid is a program through which the federal government provides a substantial portion of funding for programs to provide health care for the poor and disabled. Under Medicaid, a state may receive federal funding only if it agrees to operate health care programs that meet federal requirements set out in statute and regulation.

7.The State of Idaho has adopted a State Plan for Medicaid, which has been reviewed and approved by the Center for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services.  The State Plan is required to comply with each of the requirements of 42 USC §1396a in order to be eligible for federal funding.

8.Congress has provided for waivers of certain of the requirements in §1396a if a state applies for such a waiver and meets the conditions of such waivers.  These conditions are set out in 42 USC §1396n.  The State of Idaho has applied for and received a home and community based services waiver targeting developmentally disabled participants, known as the DD waiver program.  Many such developmentally disabled Medicaid participants receive services through that waiver, which provides a more cost-effective treatment method than available alternatives such as institutionalization in the Idaho State School and Hospital, Intermediate Care Facilities for the Intellectually Disabled or nursing facilities.

9.Developmentally disabled Medicaid participants receive services through what is known as the Medicaid Enhanced Plan.  Enhanced plans allow the state to offer benefits that go beyond those set out in the Medicaid Basic Plan.  The Basic Plan includes only those benefits that must be offered by any state wishing to participate in the federal Medicaid program.

10. Whether services are offered via the Basic Plan, the Enhanced Plan or the DD waiver program, the state receives federal reimbursement for a majority of the cost of services, typically around 70% or more of those costs.

11. Medicaid participants receiving developmental disability services either under the enhanced plan or the waiver receive an individualized budget allocation each year. Each participant, in consultation with a team of providers and the Department, is required to develop a treatment plan that will provide the needed services within the budget established by the Department.

12. Each Medicaid participant receiving developmental disability services is informed of the amount of their budget on an annual basis. The notices informing them of budget changes state that after review, the budget for the coming year will consist of a certain amount.

13. In 2017, Whittemoore provided updated information to the Department and received an "Annual Budget Notice" informing her of her annual budget, based on information provided by Garfield and her service providers and an assessment by the Department's contractor (this year, Liberty Medical). A true and correct copy of the Annual Budget Notice is attached as Exhibit A.

14. The Individual Budget Calculation is based on the Inventory of Individual Needs, the Medical, Social and Developmental Assessment Summary and the Developmental Disability Assessment Summary.

15. The budget is based, in part, on the living situation of the individual, and the associated level of support the participant requires. DD waiver program participants might live in a Certified Family Home, or they might live in a Supported Living setting. For those in Supported Living, such as Whittemoore, they receive either Hourly Supported Living services,

High Level Supported Living services, or Intense Level Supported Living services. Those qualifying for intense support have either a history of criminal and/or aggressive behaviors that necessitate constant supervision to control such behaviors or chronic or acute medical conditions that necessitate constant supervision.  Whittemoore has both.  Those qualifying for intense support generally receive individual supervision, rather than group supervision, and are typically supervised for 24 hours per day, rather than some lesser amount.  Those qualifying for high support typically receive a greater degree of their care and supervision in a group setting, and may have portions of the day that they are unsupervised or do not have a direct care provider present.

    16. The decision to approve an individual for high or intense level has significant effects.  Intense level care is substantially more expensive because it provides considerably more direct care.  A decision to move a person from intense to high level of care reduces the individual's care budget, greatly reduces the reimbursement that a residential habilitation service provider will receive for caring for that individual, and changes the hours of direct care staffing the participant is able to receive each day.

    15. Whittemoore's last Inventory of Individual Needs and Individual Budget Calculation, for reasons unknown, changed her level of need and changed her benefits accordingly.  The Department made a decision to change her level of support from intense to high, thereby denying the intense level of care Whittemore had received but failed to provide any, much less adequate, notice.  Specifically:

      (1) The change in level of support was not identified express, but instead was only identified in the budget calculation, by a change in one line on a multiple page spreadsheet;

5 - COMPLAINT

      (2)      The Department provided no statement of reason for the denial;

      (3)      The Department provided no notice of a right to appeal the change in level of support.

16.    The level of support is crucial to the services Whittemoore receives. An intense level of support qualifies her to live in her own apartment, with no roommate. A high level of support requires her to live with a roommate because of the difference in available hours of one-on-one care. This is a significant change in the benefits she receives. This decrease in benefits was imposed without notice and without any process. The Department simply changed her level of support and the services she can receive.

## Claim for Relief

### 42 USC §1983

17.    Plaintiff incorporates as if fully restated herein the preceding paragraphs.

18.    Whittemmore has a property interest in continued Medicaid benefits. That interest may only be denied, revoked or reduced in a manner consistent with due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and pursuant to federal and state statutory provisions.

19.    The Department, acting under color of state law, has proposed to change Whittemoore's eligibility and reduce a Medicaid service without providing the notice and opportunity to appeal required to comply with and provide due process of law.

20.    Plaintiff seeks to prevent Defendant from violating Whittemoore's rights, privileges or immunities under federal law.

WHEREFORE, Plaintiff prays for relief as follows:

     a.    For declaratory relief finding the change in Whittemoore's level of support requires due process under the United States Constitution, the Idaho Constitution, federal statutory and regulatory law and state statutory and regulatory law;

     b.    For permanent injunctive relief barring Defendants from reducing Whittemoore's benefits without providing adequate notice and opportunity to be heard;

     c.    For fees and costs;

     d.    For such other and further relief as the Court deems just and proper.

DATED this 16th day of June, 2017.

                             HERZFELD & PIOTROWSKI, LLP

                             /s/ James M. Piotrowski
                             James M. Piotrowski
                             Attorneys for Plaintiffs