James M. Piotrowski
Marty Durand
HERZFELD & PIOTROWSKI, LLP
P.O. Box 2864
824 W. Franklin Street
Boise, Idaho 83701
Telephone: (208)331-9200
Facsimile: (208)331-9201
james@idunionlaw.com
marty@idunionlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUTH GARFIELD, as guardian of SARAH WHITTEMOORE, ANGEL LYDA, )<br><br>Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare<br><br>Defendant. | Case No. 1:17-cv-261-BLW<br><br>FIRST AMENDED CLASS ACTION COMPLAINT |

COME NOW the Plaintiffs, by and through counsel, and for their Complaint would show as follows:

### I.     Nature of the Action

1.     Sarah Whittemoore, ("Whittemoore") is intellectually and/or physically disabled and poor. Facing these dual disadvantages, Whittemoore relies on the State of Idaho's Medicaid program, her guardian Ruth Garfield ("Garfield"), family, friends, and service providers to remain healthy and functional while living in her community rather than being confined to an

institution.  In 2017, the Idaho Department of Health and Welfare ("Department") changed and reduced Whittemoore's services without properly notifying her of the change, providing any explanation for the change, or informing her of any right to challenge the change.   Similarly, Angel Lyda is developmentally disabled and likewise depends on the Medicaid program in addition to her personal supports to live in the community.  Earlier this year, Lyda was also subjected to a reduction of Medicaid services or benefits without receiving proper notice.  All of this violated Whittemoore's and Lyda's rights to due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Idaho Constitution, as well as violating the federal Medicaid Act and federal regulations. Plaintiffs bring suit on behalf of a class of individual Medicaid participants who currently receive or have requested certain benefits under Idaho's Medicaid program, to prevent the State of Idaho, acting through its agents, from violating due process rights in the implementation of that program.

## II.  Parties, Jurisdiction, Venue

2.     Sarah Whittemoore is a developmentally disabled adult and a resident of the State of Idaho who meets both the disability and income eligibility requirements to participate in Idaho's Medicaid program and to receive benefits under its developmental disability home and community based services waiver.  Ruth Garfield is her legal guardian and also a resident of the State of Idaho.  Angel Lyda  is a developmentally disabled adult and a resident of the State of Idaho who meets both the disability and income eligibility requirements to participate in Idaho's Medicaid program and to receive benefits under its developmental disability home and community based services waiver.

3.     Defendant Richard Armstrong is the Director of the Idaho Department of Health and Welfare.  In that official capacity he is responsible for implementing Idaho's Medicaid plan.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331, and 42 U.S.C. §1983 and supplemental jurisdiction over claims arising under state law, if any, pursuant to 28 U.S.C. §1367.

5. Venue is appropriate in this District as the Defendant resides herein, the Plaintiffs reside herein, and the facts and events giving rise to the claim occurred herein.

### III. Facts Giving Rise to Cause of Action

6. Medicaid is a program through which the federal government provides a substantial portion of funding for programs to provide health care for the poor and disabled. Under Medicaid, a state may receive federal funding only if it agrees to operate health care programs that meet federal requirements set out in statute and regulation.

7. The State of Idaho has adopted a State Plan for Medicaid, which has been reviewed and approved by the Center for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services. The State Plan is required to comply with each of the requirements of 42 USC §1396a in order to be eligible for federal funding.

8. Congress has provided for waivers of certain of the requirements in §1396a if a state applies for such a waiver and meets the conditions of such waivers. These conditions are set out in 42 USC §1396n. The State of Idaho has applied for and received a home and community based services waiver targeting developmentally disabled participants, known as the DD waiver program. Many such developmentally disabled Medicaid participants receive services through that waiver, which provides a more cost-effective treatment method than

available alternatives such as institutionalization in the Idaho State School and Hospital, Intermediate Care Facilities for the Intellectually Disabled or nursing facilities.

9. Developmentally disabled Medicaid participants receive services through what is known as the Medicaid Enhanced Plan. Enhanced plans allow the state to offer benefits that go beyond those set out in the Medicaid Basic Plan. The Basic Plan includes only those benefits that must be offered by any state wishing to participate in the federal Medicaid program.

10. Whether services are offered via the Basic Plan, the Enhanced Plan or the DD waiver program, the state receives federal reimbursement for a majority of the cost of services, typically around 70% or more of those costs.

11. Medicaid participants receiving developmental disability services either under the enhanced plan or the waiver receive an individualized personal supports budget allocation each year. Each participant, in consultation with a team of providers and the Department, is required to develop a treatment plan that will provide the needed services within the personal supports budget established by the Department.

12. Each Medicaid participant receiving developmental disability services is informed of the amount of their personal supports budget on an annual basis, after the Department updates information about that individual and his or her services. The notices informing them of budget changes state that after review, the budget for the coming year will consist of a certain amount.

13. In 2017, Whittemoore provided updated information to the Department and received an "Annual Budget Notice" informing her of her annual personal supports budget, based on information provided by Garfield and her service providers and an assessment by the Department's contractor (this year, Liberty Medical).

14. In 2017, Lyda provided updated information the Department and received her "Annual Budget Notice" informing her of her annual personal supports budget, based on information provided by Lyda and her service providers, and an assessment by Liberty Medical.

15. The individual supports budget is based, in part, on the living situation of the individual, and the associated level of support the participant requires. DD waiver program participants might live in their own home and receive only non-residential services, they might live in a Certified Family Home where they receive residential habilitation services provided by an individual who owns or rents the home and provides such services in the home, or they might live in a Supported Living setting, as both Lyda and Whittemoore do.

16. Residential habilitation, the service provided in supported living settings, consists of an array of services provided by a provider known as a Residential Habilitation Agency, and includes assistance with activities of daily living such as dressing, grooming, and eating; educational activities intended to help the resident learn or retain basic living skills to enhance independence; and simple supervision to avoid and manage the predictable outcomes of the individual's disabilities. Supported living services allow the individual to live in the community rather than residing in a more restrictive environment such as a hospital or other institutional setting.

17. Idaho Medicaid participants receiving services in a supported living setting, such as the Plaintiffs herein, receive either Hourly Supported Living services, High Level Supported Living services, or Intense Level Supported Living services. Those receiving intense support must qualify under at least one of four different criteria for that level of support. Those qualifying for intense support generally receive individual supervision, rather than group supervision, and are typically supervised for 24 hours per day, rather than some lesser amount.

Those qualifying for high support typically receive a greater degree of their care and supervision in a group setting, and may have portions of the day that they are unsupervised or do not have a direct care provider present.

18. The decision to approve an individual for high or intense level has significant effects. Intense level care is substantially more expensive because it provides considerably more direct care. A decision to move a person from intense to high level of care reduces the individual's care budget, greatly reduces the reimbursement that the Residential Habilitation Agency will receive for caring for that individual, and changes the hours of direct care staffing the participant is able to receive each day.

19. The Department, under Armstrong's supervision, operates an "Intense Review Committee." The membership or makeup of this committee has not been publicized. Its meetings are not, to Plaintiffs' knowledge, publicly announced, or available for public attendance. The Committee meets in secret and, based on information and belief, makes determinations on whether individual Medicaid participants will receive intense level supported living services.

20. Whittemoore's last Inventory of Individual Needs and Individual Budget Calculation, for reasons unknown at the time of her receipt of notice of eligibility and budget determination, changed her level of need and changed her benefits accordingly. The Department made a decision to change her level of support from intense to high, thereby denying the intense level of care Whittemoore had received in the past. The eligibility and budget notice made no express reference to this determination to reduce Whittemoore's benefits level and failed to provide any meaningful notice. Specifically:

  (1) The change in level of support was not identified expressly, but instead was only indicated in the budget calculation worksheet, by a change in one line on a multiple page spreadsheet;

  (2) The Department provided no statement of reasons for the denial;

  (3) The Department provided no notice of a right to appeal the change in level of support.

21. The level of support is crucial to the services Whittemoore receives. An intense level of support allows her to live in her own apartment, with no roommate. A high level of support effectively requires her to live with a roommate by mandating (as a result of the reimbursement rates paid for services) that she receive at least some group services. The high level of support can likely only be provided if Whittemoore is willing to spend some portion of each day alone, putting her at risk for injury when she is unsupervised. The decision to reduce Whittemoore's benefits was made without notice, and would have been implemented by the Department without notice or any opportunity to respond, if Whittemoore were not represented by counsel. The Department simply changed her level of support and the services she can receive in secret and without notice.

22. Lyda suffered a nearly identical reduction of services without notice, and without an opportunity to respond. Like Whittemoore, Lyda received a budget notice which reflected a reduced budget, stated that she could still access a higher budget amount based on a pending injunction and settlement, but made no reference whatsoever to the Intense Review Committee's decision to deny Lyda intense supports services. Like Whittemoore, Lyda only challenged the denial because she was represented by professionals who identified the secret change and

appealed the denial of benefits. Both Whittemoore's and Lyda's administrative appeals are ongoing.

### IV. Class Action Allegations

23. Based on their own experiences, Lyda and Whittemoore have reason to believe that the Department, under Armstrong's supervision, is failing to provide notice of the reduction of benefits whenever it determines to discontinue Intense Level supports for individuals in supported living.

24. Plaintiffs seek to represent a class consisting of all individuals who currently receive Intense Level Supported Living services under the Idaho Medicaid program, or who have had such services denied in the two year period prior to filing of this First Amended Complaint.

25. The number of individuals receiving such services in Idaho is believed to be in the hundreds, making joinder of all such individuals in a single action impracticable.

26. As to all such members of the class, common questions of law and fact exist, including:

    a. Whether intense level residential habilitation services in supported living are a benefit or service rising to the level of a property interest;

    b. Whether the Department's Intense Review Committee is authorized to, and is in fact, making determinations to reduce Medicaid benefits;

    c. Whether a decision of the Intense Review Committee to deny intense level residential habilitation services is a reduction of benefits requiring the provision of notice, and an opportunity to be heard, as set out in federal regulations;

    d.  Whether a decision of the Intense Review Committee to deny intense level residential habilitation services is a reduction of benefits requiring the provision of due process of law consistent with the Fifth and Fourteenth Amendments to the United States Constitution.

27.    The Department, under the supervision of Armstrong, treats all such members of the class identically with respect to the review of claims for intense level supports, and with respect to its methods of issuing eligibility and budget determination notices, as well as with respect to its determination to not provide an express and detailed notice of its determinations to deny intense level supports.

28.    The issuance of injunctive and declaratory relief, as set out in more detail below, is appropriate as to the proposed class as a whole.

## Claim for Relief

42 USC §1983
Violation of Due Process

29.    Plaintiff incorporates as if fully restated herein the preceding paragraphs.

30.    Whittemoore, Lyda and the members of the proposed class have property interests in continued Medicaid benefits. Those interests may only be denied, revoked or reduced in a manner consistent with due process of law pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

31.    The Department, acting under color of state law, has repeatedly decided to reduce Whittemoore's, Lyda's and others' eligibility for benefits without providing the notice and opportunity to appeal required to comply with and provide due process of law.

32.    Plaintiff seeks to prevent Defendant from violating the rights, privileges or immunities of the proposed class members under federal law, and to that end are entitled to a declaratory judgment as well as a permanent injunction barring such violations.

WHEREFORE, Plaintiff prays for relief as follows:

a. For declaratory relief finding the change in Whittemoore's and Lyda's level of support requires due process under the United States Constitution, the Idaho Constitution, federal statutory and regulatory law and state statutory and regulatory law;

b. For permanent injunctive relief barring Defendants from reducing Whittemoore's and Lyda's benefits without providing adequate notice and opportunity to be heard;

c. For fees and costs;

d. For such other and further relief as the Court deems just and proper.

DATED this 29th day of June, 2017.

        HERZFELD & PIOTROWSKI, LLP

        /s/ James M. Piotrowski
        James M. Piotrowski
        Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June, 2017, a true and correct copy of the above and foregoing document was forwarded addressed as follows in the manner stated below:

| | | |
|---|---|---|
| Richard Armstrong, Director | Hand Delivered | ☐ |
| Idaho Department of Health and Welfare | U.S. Mail | ☒ |
| P.O. Box 83720 | Electronic Mail | ☐ |
| Boise, ID  83720-0036 | Fax | ☐ |
| | | |
| Lawrence Wasden | Hand Delivered | ☐ |
| Office of the Attorney General | U.S. Mail | ☒ |
| P.O. Box 83720 | Electronic Mail | ☐ |
| Boise, ID  83720-0010 | Fax | ☐ |

      /s/  James M. Piotrowski  
James M. Piotrowski

11 – FIRST AMENDED COMPLAINT