LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CYNTHIA L. YEE-WALLACE, ISB #6793
cynthia.wallace@ag.idaho.gov
BRIAN V. CHURCH, ISB #9391
brian.church@ag.idaho.gov
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-2400
Facsimile:  (208) 854-8073

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RUTH GARFIELD, as guardian of SARAH WHITTEMOORE, ANGEL LYDA,<br><br>Plaintiffs,<br><br>vs.<br><br>RUSS BARRON, in his official capacity as Director of the Idaho Department of Health and Welfare,<br><br>Defendant. | Case No. 1:17-cv-00261-DCN<br><br>**AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

Defendant Russ Barron, Director of the Idaho Department of Health and Welfare ("Department"), submits this amended memorandum in support of his pending motion to dismiss, which is supported by Defendant's Request for Judicial Notice ("Def.'s Req. for Jud. Notice") and Exhibits A through H attached to that request, and the declarations of Art Evans ("Evans Decl.") and Cynthia Yee-Wallace ("Yee-Wallace Decl."), previously filed in this case.

AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS - 1

## I. INTRODUCTION

Plaintiffs are part of and subject to the class action lawsuit entitled *K.W. v. Armstrong, et al.*, 1:12-cv-00022-BLW ("*K.W.*"). Directly at issue in *K.W.* was plaintiffs' claim that the Eligibility/Budget notice used by the Department reduced their budgets, and therefore reduced their Medicaid waiver services, in violation of due process. After years of litigating the form of the Eligibility/Budget notice, and after expending tremendous time, effort, and resources in court, the parties resolved that due process claim through a settlement agreement. The parties agreed to engage in dispute resolution procedures and negotiate all continuing terms of the settlement agreement in good faith. Yet without prior notice or attempt to confer in any way, Plaintiffs filed this lawsuit, bringing the same due process claims that they made in *K.W.*

The Department took immediate steps to address Plaintiffs' concerns with the Eligibility/Budget notice, pursuant to its agreement to do so in the *K.W.* settlement. Conversely, Plaintiffs continue this lawsuit even though the Eligibility/Budget notice has now been revised to address their concerns and the revisions have been negotiated with and not objected to by their attorneys, including James Piotrowski who is class counsel in *K.W.* This case attempts to force the parties into duplicative litigation where they will again expend significant and unnecessary time, effort, and resources on an issue that has already been resolved in *K.W.* Plaintiffs' claims should be dismissed. They are moot and barred by the *K.W.* settlement agreement.

## II. FACTS

With regard to the facts cited by Defendant, all support his request for dismissal under Federal Rule of Civil Procedure 12(b)(1), but only those cited in the Request for Judicial Notice support dismissal under Federal Rule of Civil Procedure 12(b)(6).

### A. Idaho Medicaid and the DD Waiver.

The State of Idaho participates in Medicaid, enacted in 1965 as Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq*.  The Medicaid Act allows the Centers for Medicare and Medicaid Services ("CMS") to waive certain requirements of the Act in response to a State's application for a waiver.  The Medicaid Home and Community-Based Services ("HCBS") waiver program is authorized in § 1915(c) of the Social Security Act.[1]  "The program permits a state to furnish an array of home and community-based services that assist Medicaid beneficiaries to live in the community and avoid institutionalization."  (DD Waiver at 1.)  Under the HCBS waiver, Idaho has applied for (and CMS has approved) the Idaho Developmental Disabilities Waiver ("DD Waiver").  For an adult to be eligible for DD Waiver services, the Department must find that he or she requires services due to a developmental disability that impairs his or her mental or physical function or independence, is capable of being maintained safely and effectively in a non-institutional setting, and would, in the absence of such services, need to reside in an institutional setting.  IDAPA 16.03.10.700.

### B. The Eligibility/Budget Notice.

Adults who participate in the DD Waiver program are assessed every year for eligibility, and if found eligible, are given a budget to use for DD Waiver services.  (*See* Def.'s Req. for Jud. Notice, Ex. C ¶¶ 11, 13, 15.)  During either an initial eligibility determination or annual redetermination, a number of assessments are performed to determine an adult's current need for DD Waiver services.  (*See id.* ¶ 16.)  An independent assessment provider ("IAP")[2] administers the Scales of Independent Behavior-Revised ("SIB-R"), which is a standardized tool evaluating

---

[1] Idaho's "Application for 1915(c) HCBS Waiver: ID.0076.R05.00 – Jul 01, 2014 (as of July 01, 2014)" ("DD Waiver") is publicly available at:
http://healthandwelfare.idaho.gov/Portals/0/Medical/DD%20Waiver.pdf.
[2] Liberty Healthcare Corp. ("Liberty) is the current contractor for Medicaid's IAPs.  (Evans Decl. ¶ 3.)

AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS - 3

functional skill levels and maladaptive behavior, used to determine whether functional limitations meet the criteria for a developmental disability.  (*See* Def.'s Req. for Jud. Notice, Ex. C ¶ 17.)

The IAP also completes an Inventory of Individual Needs assessment ("Inventory of Needs" or "IIN"), which captures the adult's current functional abilities, behavioral limitations, medical needs and other individual factors related to an individual's developmental disability. (*Id.* ¶ 18; Evans Decl. ¶ 3 and Ex. A.)  As part of the IIN questions, the adult is asked what his or her living situation will be in the upcoming year (Certified Family Home, Supported Living[3] **Hourly**, Supported Living **High**, Supported Living **Intense**, or NA).  (Evans Decl. ¶ 4.)  The adult is also asked how much support he or she needs, which will correspond to a level of support and a fee for service daily rate for that support (None, Needs support part of the day, Same room, nearby, or within hearing distance, or One-on-One).  (*See id.* ¶ 5.)  If someone chooses Supported Living **High** and his or her SIB-R support score qualifies that person for high support, he or she will be assigned high support.  (*Id.*)  If an individual chooses Supported Living **Intense** or indicates that he or she needs one-on-one support, that individual is assessed by the Department for intense supported living services, which is governed by IDAPA 16.03.10.514.02.b.i, ii, iii, iv.  (*Id.* ¶ 6.)  An intense review team reviews documentation submitted by the individual to determine if he or she qualifies for intense support per the criteria in IDAPA 16.03.10.514.02.b.i, ii, iii, iv.  (*Id.*)  If the person qualifies for intense support, he or she is given an intense level budget, which is reflected in the Eligibility/Budget notice.  (Evans

---

[3] Supported living is the living arrangement where an adult on the DD Waiver chooses where he or she wants to live and also chooses a Medicaid provider that provides rotating staff to provide support for that individual to live in the community either on an hourly or 24-hour basis.  (Evans Decl. ¶ 4.)  The Medicaid providers who provide support to DD Waiver participants through supported living are paid an hourly or daily rate pursuant to a Medicaid fee for service schedule.  (*Id.*)

AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS - 4

Decl. ¶ 6.) If the individual does not qualify for intense, but indicates that he or she wants supported living, then the individual's SIB-R score is reviewed to determine if they qualify for high support. (*Id*.) If the individual qualifies for high support, he or she is given a high support budget, all of which is reflected in the Eligibility/Budget notice. (*Id*.)

If an adult is eligible for DD Waiver services, then the next step is to generate the participant's Calculated Budget. (*See* Def.'s Req. for Jud. Notice, Ex. C ¶ 20.) The Department sends the participant a notice informing the participant of his or her eligibility in the DD Waiver program, and if eligible, the Calculated Budget that the participant will have to work with for the upcoming plan year.[4] (*See id.* ¶ 27.) The notice sent to participants at this stage of the process is the notice at issue in this case and is the same notice at issue in the *K.W.* litigation, the "Eligibility/Budget notice" also labeled "Annual Budget Notice." (Yee-Wallace Decl. Ex. A; *see also* Def.'s Req. for Judicial Notice, Ex. D, Class Action Settlement Ex. 4.)

## C. The *K.W.* Class Action Lawsuit.

On January 18, 2012, 13 plaintiffs filed a Complaint for Temporary and Permanent Injunction in the *K.W.* lawsuit. On March 25, 2014, the *K.W.* court certified a class of "[a]ll persons who are participants in or applicants to the [Adult Developmental Disability Services program ("DDS Program")], administered by the [Idaho Department of Health and Welfare] as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process." (Def.'s Req. for Jud. Notice, Ex. B at 30.)

On July 24, 2015, the *K.W.* plaintiffs filed their Amended Consolidated Class Action Complaint pursuant to § 1983 and the Supremacy Clause, alleging on behalf of the class that the

---

[4] Pursuant to the Class Action Settlement in *K.W.*, the Department continues to extend a DD Waiver participant's highest budget in the program since July 1, 2011, which is also included in the Budget/Eligibility notice. (Def.'s Req. for Judicial Notice, Ex. D at 12.)

Department's assessment process, budget setting methodology, fair hearing system, and budget notice violated due process and equal protection standards.[5]  (Def.'s Req. for Jud. Notice, Ex. A.)

The parties extensively litigated the contents of the Eligibility/Budget notice in the *K.W.* lawsuit.[6]  The parties also filed hundreds, if not thousands, of documents briefing cross-motions for summary judgment on both the class-wide claims and the individual claims in July of 2015.  On March 28, 2016, the court in *K.W.* granted in part and denied in part, the parties' cross-motions for summary judgment.  (Mem. Decision & Order, *K.W. v. Armstrong* (No. 1:12-cv-00022) Dkt. 270.)

### D. The *K.W.* Class Action Settlement Agreement.

Within days of the court's decision in *K.W.* and over the course of five months, the parties, through counsel, negotiated almost every single business day (and many times on weekends) and drafted and agreed to a 91-page Class Action Settlement Agreement ("KW settlement agreement"), which resolved all class-wide claims in the Amended Class Action Complaint.  (Def.'s Req. for Jud. Notice, Ex. D; *and see id.*, Ex. E at 5.)  Class counsel convened all day meetings of class representatives, other class members and their families, and advocates and service providers to gather ideas about settlement avenues and solicit feedback about settlement proposals from the Department.  (*Id.*, Ex. E at 5.)  Likewise for the Department, top leadership officials at the Department were actively involved in every decision discussed in the settlement and committed to collaborating with plaintiffs to find solutions and common ground

---

[5] The Amended Class Action Complaint also alleged that the Department's budget setting methodology violated the Medicaid Act.  (Def.'s Req. for Jud. Notice, Ex. A ¶ 106-111.)  The named plaintiffs also filed individual claims of discrimination under Title II of the Americans with Disabilities Act and the Rehabilitation Act.  (*Id.* ¶¶ 119-124.)

[6] The Court denied the Department's requests to approve a revised version of the Eligibility/Budget notice on March 23, 2012 (*K.W.* Dkt. 42), July 1, 2013 (*K.W.* Dkt. 98), and July 27, 2015 (*K.W.* Dkt. 187-1 at 2), in *K.W.*

with them.  (*Id.*, Ex. E at 6.)  The parties jointly asked the court to approve the KW settlement agreement, which the court preliminarily approved on October 20, 2016 (*Id.*, Ex. F) and gave final approval on January 12, 2017 (*Id.*, Ex. G).

Notably, to finally resolve the due process claims made by the *K.W.* plaintiffs regarding the Eligibility/Budget notice, the parties agreed to the form and content of the Eligibility/Budget notice, which was attached to the KW settlement agreement as Exhibit 4.  (*Id.*, Ex. D at 24, Ex. 4 attached thereto.)  Counsel on both sides reviewed and revised the new notice and agreed that the court should approve it.  (*Id.*, Ex. E at 9.)  The language that the parties agreed to in the Eligibility/Budget notice was also to be used as the template for all Eligibility/Budget notices used by the Department in the adult DD waiver program.

Although the parties agreed to the form and content of the Eligibility/Budget notice, the KW settlement agreement contemplated that the form would be updated and amended in the future.  For example, it is required that the notice be revised to allow adult applicants and participants a place to indicate, request, and list who he or she wanted to help them with an appeal.  (Def.'s Req. for Jud. Notice, Ex. A at 13-14.)  And the KW settlement agreement requires the Department to develop and implement all "forms, processes, and procedures necessary to effectuate the Bridge Period requirements" in the agreement.  (*Id.*, Ex. A at 12, 16-18, 23.)  The KW settlement agreement also requires the Department to give class counsel an opportunity to review all proposed forms, processes, and procedures, to which class counsel has 14 days to object. (*Id.*, Ex. A at 23.)  If class counsel does not object, the forms may be implemented by the Department.  (*Id.*)  If class counsel does object, the parties are required to commence the dispute resolution procedures set forth in the settlement agreement.  (*Id.*)

The dispute resolution procedures in the KW settlement agreement are a significant benefit of the bargain that the parties negotiated and agreed to.  One of the key drivers behind the parties' entering into the KW settlement agreement was to "allow Defendants to comply with the [*K.W.*] Court's March 28, 2016 order (Dkt. 270) and to avoid the time, expense and diversion of resources required by litigating the issues in the Court's order…." (Joint Mot. for Preliminary Approval of Class Action Settlement & for Approval of Class Notice, *K.W. v. Armstrong* (No. 1:12-cv-00022) Dkt. 306 at 2.)  By the time the KW settlement agreement was completed, the parties had spent four years litigating the issues in *K.W.*, including the substance of the Eligibility/Budget notice.  In the four years of litigation, the parties had been to the Ninth Circuit and back, exchanged "hundreds of thousands of pages of documents" in discovery, deposed over three dozen witnesses, and submitted thousands of documents briefing the matter for summary judgment.  (Def.'s Req. for Jud. Notice, Ex. E at 4.)

E.  **The Settlement Agreement's Dispute Resolution Process**.

Specifically with regard to the Eligibility/Budget notice at issue in this case and in *K.W.*, the parties' agreement to the form of the notice was no small feat or compromise.  The parties tried to agree on the form of the notice since 2012 and always reached an impasse on its contents until the KW settlement agreement was drafted.  (Def.'s Req. for Jud. Notice, Ex. E at 3.)  The KW settlement agreement resolved that impasse and required the parties to engage in good faith negotiations over the budget notice in the future.  (*Id.*, Ex. D at 24, 32.)  The agreement contains the parties' joint request for the court to approve the notice and the requirement that if approved, the Department would use the Eligibility/Budget notice until the new resource allocation model is implemented.  (*Id.*, Ex. D at 24.)

The parties also agreed that "during the term of [the KW settlement agreement], they will continue to engage in good faith negotiations regarding all terms and conditions of [the] Agreement." (*Id.*, Ex. D at 32.)  And where the parties were required or allowed to engage in the dispute resolution process, the parties agreed that counsel would "meet and confer in person…and use their good faith, best efforts to discuss and resolve the dispute." (*Id.*)  If the parties are unable to resolve their dispute within 14 days, or another mutually agreeable timeframe, then either party could file an appropriate motion with the court in *K.W.* (*Id.*)

As contemplated, the Department developed and/or revised many of its forms to comply with the KW settlement agreement, including updating the Eligibility/Budget notice approved by the court in *K.W.* (Yee-Wallace Decl. ¶ 2.)  The parties exchanged drafts and negotiated revisions of the Eligibility/Budget notice, slightly tweaking it for readability and accuracy and adding additional direction on appealing for health or safety needs and identifying someone to help with an appeal. (*Id.*)   In fact, since January of 2017 through the present date, counsel for the Department has worked with class counsel for the Plaintiffs, to confer and negotiate in good faith on developing and revising the forms in the DD Waiver program that were addressed in the KW Class Action Settlement Agreement, including the Eligibility/Budget notice. (*See* Yee-Wallace Decl., Ex. A.)  These forms total almost 500 pages of documents.  (*Id.*)

The parties were still negotiating the revisions to the court approved Eligibility/Budget notice, when on June 16, 2017—without prior notice or attempt to confer about the issue—Plaintiff Whittemoore filed this lawsuit alleging the same due process violations that she did in *K.W.*  (*See* Yee-Wallace Decl., ¶ 3; Dkt. 1).  Plaintiff Lyda joined Whittemoore's Complaint on June 29, 2017, and again sought class action status on the basis that the Department was unconstitutionally reducing services without adequate notice.  (Dkt. 4 at 8.)

The plaintiffs in *K.W.* likewise claimed that the reduction of their budgets without proper notice constituted a denial of their constitutional right to due process. (Def.'s Req. for Jud. Notice, Ex. A at 30.) The KW settlement agreement fully addressed, resolved, and settled all class-wide claims contained in Counts 1 through 6 of plaintiffs' Amended Class Action Complaint in *K.W.*, including their argument that the Eligibility/Budget notice was inadequate under the due process standards. (*Id.*, Ex. D at 35; *id.*, Ex. A ¶¶ 103-05.)

F. **Whittemoore and Lyda Received Revised Notices.**

Plaintiff Whittemoore has been a DD Waiver program participant since October 2015. (Evans Decl. ¶ 7.) She received her Eligibility/Budget notice on March 7, 2017 for the plan year period May 11, 2017 through May 10, 2018. (Evans Decl. ¶ 7 and Ex. B.) On March 30, 2017, Ms. Whittemoore (through Ruth Garfield) appealed her eligibility/budget determination on the grounds that she did not "agree with the changes in Level of Support and changes made to [her] Inventory of Needs." (*Id.* ¶ 8 and Ex. C.) When eligibility/budget appeals are filed by DD Waiver applicants and participants, the Department engages in informal review, a process where a Department staff member reviews the appeal and determines if the appeal can be resolved informally, without proceeding to an administrative hearing. (Evans Decl. ¶ 9.) An informal review was performed for Ms. Whittemoore. (*Id.*) As part of that review, the intense review team again reviewed whether Ms. Whittemoore qualified for intense supported living and again found that she did not meet the criteria for intense support. (*Id.*) Rather, her support scores qualified her for hourly support. (*Id.*) Ms. Whittemoore's appeal did not resolve itself informally, so it proceeded to an administrative hearing. (*Id.*)

As Ms. Whittemoore was going through the administrative appeal process, she filed this lawsuit on June 16, 2017. (Dkt. 1.) After receiving Whittemoore's complaint in this case, the

Department revised Ms. Whittemoore's Eligibility/Budget notice to address her claims and in a notice dated June 26, 2017 gave Ms. Whittemoore another opportunity to appeal her eligibility/budget determination. (Evans Decl. ¶ 10 and Ex. D.) Ms. Whittemoore did not appeal her eligibility/budget pursuant to the June 26, 2017 revised notice. (Evans Decl. ¶ 10.)

Instead, on July 18, 2017, Ms. Whittemoore proceeded to an administrative hearing on her eligibility/budget determination from the March 7, 2017 notice. (*Id*. ¶ 11.) The hearing officer subsequently upheld the Department's denial of intense level of support. (*Id*. and Ex. E.) Ms. Whittemoore has petitioned for a director's review of that decision and the parties' briefing is due in the administrative director's review in October of 2017. (Evans Decl. ¶ 12.) Ms. Whittemoore's current level of services, including her intense level of support, will remain in place pending the exhaustion of the administrative process. (*Id*.)

Plaintiff Lyda has been a DD Waiver program participant since 2013. (*Id*. ¶ 13.) For the plan year period from February 12, 2017 through February 11, 2018, Ms. Lyda received an Eligibility/Budget notice dated November 17, 2016. (*Id*. ¶ 13 and Ex. F.) On December 14, 2016, Ms. Lyda appealed her eligibility/budget determination on the grounds that she "feels she meets the criteria for intense support due to her many hospitalizations." (*Id*. ¶ 14 and Ex. G.) As with Ms. Whittemoore, an informal review was performed for Ms. Lyda, and the Department's intense review team reviewed whether Ms. Lyda qualified for intense supported living; the team again found she did not meet the criteria. (Evans Decl. ¶ 14.) The intense review team also requested that Ms. Lyda's SIB-R be updated to determine whether she was eligible for high supported living. (*Id*.) An updated SIB-R was completed on March 13, 2017. (*Id*.) Ms. Lyda's appeal did not resolve itself informally, so it proceeded to an administrative hearing. (*Id*.)

On July 7, 2017, the hearing officer for the administrative hearing issued a preliminary order, affirming the Department's initial eligibility/budget determination. (*Id.* ¶ 15 and Ex. H.) However, before the issuance of that order, Ms. Lyda joined as a plaintiff to this lawsuit in the operative complaint, filed on June 29, 2017. (*Id.* ¶ 16; Dkt. 4.) And as with Ms. Whittemoore, the Department revised Ms. Lyda's Eligibility/Budget notice to address her claims in this lawsuit and gave her another opportunity to appeal her eligibility/budget determination. (Evans Decl. ¶ 16.) This revised notice was dated and sent to Ms. Lyda on August 25, 2017. (*Id.*)

Unlike Ms. Whittemoore, Ms. Lyda appealed her amended eligibility/budget determination on September 20, 2017. (*Id.* ¶ 17.) She appealed on the ground that "Hourly Supported Living does not meet [her] Health and Safety needs." (*Id.*) That appeal is now in the administrative hearing process. (*Id.*) Ms. Lyda's current level of services, including her intense level of support, will remain in place pending the exhaustion of the administrative process. (*Id.*).

Attached to the declaration of Art Evans is a copy of the Eligibility/Budget notice negotiated by the parties in the *K.W.* lawsuit that is being used by Liberty Healthcare (the Department's IAP contractor) for all DD Waiver participants. (*See id.* ¶ 18 and Ex. J.) This notice was used as the template to revise all of the eligibility notices used by the Department for the DD Waiver program, which counsel for the Department also negotiated with class action counsel in *K.W.* (Evans Decl. ¶ 18; Yee-Wallace Decl. Ex. A.)

### III.     STANDARD

**A. <u>Courts may resolve factual issues for a motion to dismiss under Rule 12(b)(1).</u>**

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. "Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists." *Bedke*

*v. Sec'y of Interior*, No. CV-09-399-E-DOC, 2010 WL 2000052, at *3 (D. Idaho May 19, 2010) (citing *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists")). "Accordingly, the Court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). The court need not presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242 (citation omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2 (citation omitted).

**B. Under a Rule 12(b)(6) motion to dismiss, a court may rely on judicially noticed documents.**

A Rule 12(b)(6) motion to dismiss tests whether the complaint "contain[s] sufficient factual matter accepted as true, to state a claim to relief that is plausible on its face." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted) (citation omitted).

Where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," the complaint must be dismissed under Rule 12(b)(6). *Hartmann v. Cal. Dep't of Corr.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted). When considering a motion to dismiss under Rule 12(b)(6), the Court considers the pleadings along with any exhibits attached to the complaint and any matters that were subject to judicial notice. *Akhtar*, 698 F.3d at 1212 (citation omitted).

### IV.   DISCUSSION

**A. <u>Because Plaintiffs have already received the relief they would have been possibly entitled to at the end of the proceedings, this case is moot.</u>**

The jurisdiction of federal courts depend on the existence of a "case or controversy" under Article III, section 2 of the United States Constitution, which restricts the authority of federal courts to resolving "the legal rights of litigants in actual controversies." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982) (citation omitted). In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that s/he possesses a legally cognizable interest, or "personal stake" in the outcome of the action. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (citation omitted). The case-or-controversy requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997) (citation omitted). If an intervening circumstance deprives the plaintiff of a "personal stake in the outcome of the lawsuit," at any point during litigation, the action can no longer proceed and must be dismissed as moot. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990) (internal quotation marks omitted) (citations omitted).

If events after the filing of the complaint resolve the dispute, the court must dismiss the case as moot, because there is no longer an "actual, ongoing controversy." *Pitts v. Terrible*

*Herbst, Inc.*, 653 F.3d 1081, 1086-87 (9th Cir. 2011) (citation omitted).  In determining whether a request for declaratory relief has become moot, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)) (emphasis omitted).  Or stated differently, the dispositive question is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief."  *Gator.com Corp. v. LL Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc) (internal quotation marks omitted) (citations omitted).  Additionally, when a party is seeking an injunction, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available.  The question is whether there can be any effective relief."  *N.W. Evntl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988) (emphasis omitted) (citation omitted).  An individual claim "becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation."  *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016).

Here, Plaintiffs claim Defendant failed to provide appropriate notice to them regarding their eligibility for Medicaid DD Waiver services, specifically the level of support Plaintiffs would be budgeted for.  (Dkt. 4 ¶ 31.)  This claim alleges shortcomings in the Eligibility/Budget notice provided.  According to Plaintiffs, the deficiencies in the (original) Eligibility/Budget notice were:

(1) The change in level of support was not identified expressly, but instead was only indicated in the budget calculation worksheet, by a change in one line on a multiple page spreadsheet;

(2) The Department provided no statement of reasons for the denial;

(3) The Department provided no notice of a right to appeal the change in level of

support.

(Dkt. 4 ¶ 20; *see also id.* ¶ 22.)  Plaintiffs thus asked the Court to enjoin Defendant "from reducing Whittemoore's and Lyda's benefits without providing adequate notice and opportunity to be heard" and for declaratory relief.  (*Id.* at 10, ¶¶ a-b.)

Yet after the operative Complaint (Dkt. 4) was filed, Defendant provided Plaintiffs with the actual relief they would have obtained had this litigation gone forward: an amended Eligibility/Budget notice detailing the reasons for the Department's determinations and the opportunity to appeal under the amended notice.  Each of the areas identified by Plaintiffs as deficient in the original eligibility/budget notice was addressed in the amended eligibility/budget notice to both Whittemoore and Lyda.

Yet, for this lawsuit and the Court's mootness determination, what matters is not Plaintiffs' self-created list of deficiencies, but what federal due process requires.[7]  (Dkt. 4 ¶ 30.) For a procedural due process claim under 42 U.S.C. § 1983 to survive, there must be a protected interest that is deprived by state action without due process.  *See Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).  For purposes of this motion, the Court can assume that there is a protected property interest that is implicated by the calculation of a lower budget for Medicaid DD Waiver services.  *See K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 972-74 (9th Cir. 2015) ("*K.W. Appeal*").  If a protected property interest is at issue, then the Due Process Clause requires

---

[7] Although the operative complaint mentions in passing Article I, section 13 of the Idaho Constitution in its nature of action and prayer for relief, Plaintiffs do not raise a claim for relief under the Idaho Constitution. The only claim they raise is brought under the vehicle of 42 U.S.C. § 1983, and it does not provide a cause of action for alleged violations of state law. *See, e.g.*, *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).  But even if Plaintiffs had raised a valid claim under the Idaho Constitution, the claim would also be moot. Idaho's due process clause, like the federal due process clause, focuses on "the minimum guarantees of notice and a hearing where deprivation of a property interest may occur." *Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 780, 215 P.3d 494, 500 (2009) (citation omitted) (discussing procedural due process after indicating that the claim was made under the federal constitution and the state constitution).

"timely and adequate notice detailing the reasons for a proposed termination" as well as a pre-deprivation hearing.  *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *see also K.W. Appeal*, 789 F.3d at 974.  The revised Eligibility/Budget notices sent to Plaintiffs provide pre-deprivation notice *with* an explanation of the reasons why Ms. Whittemore was denied for Intense Support Living services and why Ms. Lyda was denied High Supported Living services, *and* their budget calculations.  Plaintiffs were also offered an opportunity for a hearing.  Federal due process has been satisfied by the revised Eligibility/Budget notices sent to each Plaintiff here.  Plaintiffs' request for injunctive relief is therefore moot because there is no more effective relief.

Finally, Plaintiffs' request for declaratory relief is moot because there is no occasion for meaningful relief and pending claims cannot be based on allegations of past violations.  The Department Eligibility/Budget notice now in effect contains the language approved by the court in *K.W.*, with additional negotiated edits through counsel, and a template requiring the continuation of detailed, individualized explanations for any denials of intense or high support.  (Evans Decl. Ex. J; Yee-Wallace Decl. Ex. A.)  All Department DD Waiver eligibility/budget notices have been revised consistent with the Eligibility/Budget notice now in effect and will be effective for use in the DD Waiver program, absent further revision requests by the Plaintiffs in the *K.W. v. Armstrong* lawsuit, on October 6, 2017.  (Evans Decl. ¶ 18.)  This Court cannot provide any meaningful relief by issuing a declaration based on alleged acts of past misconduct.  As the Ninth Circuit reiterated this year, issuing "a declaratory judgment merely adjudicating past violations of federal law…is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 868 (9th Cir. 2017) (citation omitted).  The request for declaratory relief is moot and the operative Complaint (Dkt. 4) should be dismissed.

B. **The KW settlement agreement bars Plaintiffs' claims.**

Plaintiffs' due process claim rests on their contention that the Eligibility/Budget notices that they received in November 2016 (Lyda) and March 2017 (Whittemoore) did not adequately explain why their "level of support" dropped from Intense to High supported living. (Dkt. 4 ¶¶ 20-22.) As discussed above, the Department provided them with revised notices in June 2017 (Whittemoore) and August 2017 (Lyda) that detail the grounds for the change in the assessed level of care. The very basis for this lawsuit has thus evaporated.

But even if a live case or controversy remained, the KW settlement agreement in the *K.W.* litigation precludes Plaintiffs from maintaining this action. The KW settlement agreement's applicability to the procedural due process allegations in this matter has settled claim preclusion, or *res judicata*, consequences. As the Supreme Court stated in *Taylor v. Sturgell*, 553 U.S. 880 (2008):

> "It is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." Several exceptions, recognized in this Court's decisions, temper this basic rule. In a class action, for example, a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation.

*Id.* at 884 (citations omitted). The Ninth Circuit had previously made the same point. *Dosier v. Miami Valley Broad. Corp.*, 656 F.2d 1295, 1299 (9th Cir. 1981) ("It is true that a class member is not bound by a class action judgment if he was not adequately represented. But a class member who is represented by counsel during a class action settlement hearing is bound by the settlement agreement." (Citations omitted.)). As one district court held recently, "[a] court-approved class action settlement bars new claims by members of the class that were released as part of that settlement" because, "[o]therwise, 'restricting the *res judicata* effect of class action

settlements would lessen a defendant's incentive to settle.'" *Adams v. Wells Fargo Bank, N.A.*, No. 13-CV-05164-YGR, 2015 WL 1434599, at *2 (N.D. Cal. Mar. 30, 2015) (quoting *Durkin v. Shea & Gould,* 92 F.3d 1510, 1518 (9th Cir. 1996)); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014) (courts apply *res judicata* and claim preclusion as a consequence of settlement agreements because by doing so it encourages settlements and "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action" (citations omitted)).

Several provisions of the KW settlement agreement control on this score, including Section V.S (stating the agreement resolves all of the class-wide claims, including the due process claim over the Eligibility/Budget notice); Section V.E (jointly asking the Court to approve the form of the Eligibility/Budget Notice); Section V.L.1 (requiring prior written notice of noncompliance before initiating suit); Section V.L.3 (allowing judicial remedies if the noncompliant party does not respond);  and Section V.M. (containing the parties' agreement to continue to engage in good faith negotiations regarding all terms of the agreement). (Def.'s Req. Jud. Notice, Ex. D at 24, 31, 32, 35; Ex. A ¶ 103)  Plaintiffs' claim that they did not receive constitutionally adequate notice falls squarely within the four corners of the *K.W.* Amended Consolidated Class Action Complaint (alleging a due process violation) and the subsequent KW settlement agreement.  Indeed, the due process claim regarding adequate notice when there is a reduction in assistance is what Plaintiffs assert here, and was resolved in the KW settlement agreement.  The KW settlement agreement expressly addresses the adequacy of budget or service plan notices, identifies an appropriate notice, and provides a mechanism for resolving disputes

over whether the Department has failed to provide agreement-compliant notice to class members. Plaintiffs' due process claim is precluded and dismissal under Rule 12(b)(6) is warranted.

## V. CONCLUSION

Had Plaintiffs brought their concerns over the Eligibility/Budget notice to the Department in a good faith effort to resolve their complaints, this lawsuit could and should have been avoided. The Department revised both Ms. Whittemoore and Ms. Lyda's notices, detailing the reasons for their level of support determination, and gave them both the opportunity to appeal that determination under those revised notices. Their claims are moot. In the alternative, Plaintiffs' claims are also covered by and barred by the terms of the complaint in *K.W.* and the KW settlement agreement. Their complaint should be dismissed.

DATED: October 18, 2017.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


By: /s/ *Cynthia Yee-Wallace*          By: /s/ *Brian V. Church*
    Cynthia Yee-Wallace                   Brian V. Church
    Deputy Attorney General               Deputy Attorney General


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| James Piotrowski | Marty Durand |
| james@idunionlaw.com | marty@idunionlaw.com |

                                                /s/ *Cynthia Yee-Wallace*
                                                Cynthia Yee-Wallace
                                                Deputy Attorney General